IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

**DAMON B. PARKS,**             )
                                )
       Plaintiff,              )
                                )
v.                              )     **Civil No. 08-749-JPG-CJP**
                                )
**MICHAEL J. ASTRUE,**          )
**Commissioner of Social Security,**  )
                                )
       Defendant.              )

### **REPORT and RECOMMENDATION**

      This Report and Recommendation is respectfully submitted to District Judge J. Phil Gilbert pursuant to **28 U.S.C. § 636(b)(1)(B)**.

      In accordance with **42 U.S.C. § 405(g)**, plaintiff Damon B. Parks seeks judicial review of the final agency decision finding that he is not disabled and denying him Supplemental Security Income (SSI) pursuant to **42 U.S.C. § 423**.[1]

### **Procedural History**

      Plaintiff filed an application for Disability Insurance Benefits and Supplemental Security Benefits on July 6, 2004, alleging disability beginning on December 31, 1999. (Tr. 60). Plaintiff was insured for DIB only through September 30, 1990. (Tr. 54). Therefore, his claim for DIB was dismissed by the Administrative Law Judge. (Tr. 13). Plaintiff does not challenge that decision as to DIB.

      Mr. Parks claims disability due to diabetes, high blood pressure, hernia , back injury,

---

[1] The statutes and regulations pertaining to DIB are found at 42 U.S.C. § 423, et seq., and 20 C.F.R. pt. 404. The statutes and regulations pertaining to SSI are found at 42 U.S.C. §§ 1382 and 1382c, et seq., and 20 C.F.R. pt. 416. For all intents and purposes relevant to this case, the DIB and SSI statutes are identical. Furthermore, 20 C.F.R. § 416.925 detailing medical considerations relevant to an SSI claim, relies on 20 C.F.R. Pt. 404, Subpt. P, the DIB regulations. Thus, most citations herein are to the DIB regulations out of convenience.

impulse control disorder, ruptured appendix, and five gunshot wounds.  (Tr. 72).

Plaintiff filed several applications for benefits before the July, 2004, application.  At some point, he was found to be disabled.  He was receiving SSI payments in 1996, but the record does not establish the nature of his disability.  (Tr. 46).  The payments were later discontinued because he went to prison.  (Pursuant to 42 U.S.C. §402(x)(1)(A), Social Security disability benefits may not be paid to persons who are confined to prison pursuant to a criminal conviction.)  He has had numerous criminal convictions and was incarcerated on and off for some 17 years.  (Tr. 257).  Mr. Parks was released from the IDOC in September, 2000.  (Tr. 66).  Thereafter, he again applied for disability benefits; his claims were denied on April 4, 2001, and March 25, 2004.  (Tr. 101-102).

The Court notes that Mr. Parks is again in prison.  According to the IDOC's website (www.idoc.state.il.us, accessed on January 21, 2010), Mr. Parks is currently serving a ten year sentence on a narcotics charge out of Franklin County, and a three year sentence on a theft charge out of Union County.  His custody date is June 19, 2008, and his projected parole date is May 1, 2013.

On January 3, 2008, Mr. Parks filed an application for SSI after the subject application was denied by the ALJ.  That application was successful.  He was awarded benefits, to be paid to his wife on his behalf, for disability as of January, 2008.  (Tr. 371-381).  The record does not state the reason for his disability.

The application at issue here was denied initially and on reconsideration.  At plaintiff's request, a hearing was held before Administrative Law Judge (ALJ) Anne C. Pritchett on September 25, 2007.  (Tr. 382).  ALJ Pritchett denied the application for benefits in a decision dated December 27, 2007.  (Tr. 13-22).  Plaintiff's request for review was denied by the Appeals Council, and the December 27, 2007, decision became the final agency decision.  (Tr. 3).

Plaintiff has exhausted his administrative remedies and has filed a timely complaint in this court.

## Issues Raised by Plaintiff

Plaintiff raises the following issues:

1. Whether the fact that plaintiff was later found to be disabled meant that the ALJ erred in finding him not disabled in December, 2007;

2. Whether the ALJ erred in failing to ask the vocational expert whether his testimony conflicted with the Dictionary of Occupational Titles; and

3. Whether the ALJ erred in evaluating the alleged side effects of plaintiff's medications.

## The Evidentiary Record

The Court has reviewed and considered the entire record in formulating this Report and Recommendation. The following is a summary of some of the pertinent portions of the written record.

**1.    Hearing, September 25, 2007**

Plaintiff and vocational expert Darrell Taylor testified at the hearing. Plaintiff was represented at the hearing by attorney Patrick Prendergast. (Tr. 384).

### Testimony of Plaintiff

Damon B. Parks was born on October 3, 1966. He was 5'11.5" tall and weighed about 315 pounds at the time of the hearing. (Tr. 385). He has a tenth grade education, no GED or vocational training. (Tr. 386).

He had no full-time work in the past 15 years. (Tr. 387). He stated that he has been in prison for much of his adult life. (Tr. 389-390).

Plaintiff was diagnosed with diabetes in 1989 or 1990. He has poor control of his blood sugars, although he testified that he was compliant with his medications. (Tr. 388). Mr. Parks

testified that he has bipolar disease, for which he takes medication. (Tr. 387). He has peripheral neuropathy from the waist to his toes, which causes a burning and stabbing pain. (Tr. 391). He also has obstructive pulmonary disease. (Tr. 393).

With regard to his physical capacity, plaintiff testified that he can stand for only 7 or 8 minutes, and can sit for only 12 to 15 minutes. He cannot bend at the waist and pick something up from the floor. He can walk only a quarter of a block, with a cane. He can lift between 8 and 10 pounds. (Tr. 397-400).

Plaintiff does no housework. He has no hobbies and does no yard work. He smokes a half-pack to a pack of cigarettes a day. (Tr. 402-403). Plaintiff testified that he basically sleeps all day and watches television. (Tr. 404-406).

The ALJ read a list of plaintiff's medications, which included Lamictal, Abilify, and Thorazine. (Tr. 387). Plaintiff testified that the side effects of these medications include sleepiness. According to him, after taking his medications, he falls asleep for about 6 hours. (Tr. 390).

**Testimony of Vocational Expert**

Darrell Taylor testified as a vocational expert. Plaintiff made no objections to his qualifications. (Tr. 384).

The ALJ asked the expert to assume an individual who could lift 20 pounds occasionally, 10 pounds frequently, stand four hours a day, sit four hours a day, perform unskilled work with occasional interaction with supervisors and co-workers, no interaction with the public, and a low stress environment. According to Dr. Taylor, the individual could perform work at the light, unskilled level such as hand packer (6,000 jobs in the regional economy) or assembler (15, 000 jobs in the regional economy). (Tr. 408-409). Adding a restriction of only occasional postural activities would yield the same results. (Tr. 409).

The ALJ then asked Dr. Taylor to assume a person able to do only sedentary work with a sit/stand option.  He testified that person could perform the functions of production inspector (4,000 jobs) and checker (1,500 jobs).  (Tr. 410).  Removing the sit/stand option would double those numbers.  (*Id*.).  Lastly, if he assumed that all of plaintiff's testimony were credible, he would not be able to maintain full-time work at any level.  (*Id*.).

**2.     Medical records**

Plaintiff was seen for court-ordered anger management counseling at Family Counseling Center in Vienna, Illinois, in September , 2000.  He had recently been discharged from Pinckneyville Correctional Center.  He was noted to be an insulin-dependent diabetic, obese, with asthma.  He had been shot in the back, buttock, and abdomen in the past.  He was evaluated as having impulse control disorder, rule out malingering, antisocial personality disorder, and probable borderline intellectual functioning.  (Tr. 179-181).  He told the counselor that, prior to his incarceration, he had been on Social Security disability for "mental illness."  (Tr. 180).

In July, 2004, plaintiff was hospitalized overnight after an episode of chest pain.  He was noted to have hypertension.  His cardiac enzymes and EKG were normal.  He was observed overnight and released.  (Tr. 185-194).

Plaintiff was treated by Dr. Hunter-Reach in the Rural Health Clinic in Anna, Illinois, beginning in April, 2004.  He was noted to have chronic pain due to a herniated lumbar disc, Type II diabetes with peripheral neuropathy, and hypertension.  (Tr. 233).  He was prescribed Lorcet for pain, but, on May 24, 2004, Dr. Hunter-Reach informed him that she would no longer refill his pain medication, and that he would have to be "referred to Pain Management."  (Tr. 230).  On December 13, 2004, he complained of shortness of breath. His weight was 302 pounds.  He was in no acute distress.  He did complain of burning in his arms and especially legs, which was not unusual for him due to his neuropathy. He was requesting a cane.  The doctor's plan was

to review his lab results to determine if he had asthma or chronic obstructive pulmonary disease. (Tr. 220).

An EMG performed on November 27, 2006,confirmed that plaintiff has moderate sensorimotor peripheral neuropathy. (Tr. 281).

In 2007, Mr. Parks was seen by Dr. Newell at Herrin Hospital for degenerative disc disease with muscle spasm and radiculitis, and was referred for physical therapy at that institution. (Tr. 317-321). On April 19, 2007, Dr. Newell's exam showed functional range of motion and good strength in both upper limbs. Lower limbs showed some muscle weakness, which was thought to be due, in part, to "lack of effort." There was no significant atrophy. He did have diminished sensation and no reflexes in the lower limbs. (Tr. 320-321). On June 19, 2007, Dr. Newell noted that Mr. Parks had "made some pretty good headway" with physical therapy and was "really pretty happy" his progress. He continued to complain of numbness and tingling in his feet, and back pain. He was taking Hydrocone for pain. The diagnosis was chronic pain syndrome with diabetic peripheral neuropathy. (Tr. 317).

The record also contains mental health treatment records. Plaintiff was treated at Union County Counseling Services in 2005. William Mings, M.D., saw him on March 7, 2005, and diagnosed  diagnosed bipolar disorder, a history of impulse control disorder, and personality disorder. He was assessed a GAF of 62. Dr. Mings prescribed Lamictal. (Tr. 243-245). On March 15, 2005, Dr. Warshauer, a psychologist, assessed his GAF at 45. (Tr. 242). Plaintiff reported to Dr. Warshauer that Lamictal was "very beneficial in terms of his being able to sleep." (Tr. 241). Dr. Mings saw plaintiff again on April 29, 2005. Plaintiff reported that he had "considerable improvement" with Lamictal in that he felt more calm, his mood was more stable, and he could think more clearly. He reported "no problems with appetite or sleep." (Tr. 240).

**3.**     **Psychological Examination - Harry J. Deppe, Ph.D.**

-6-

Dr. Deppe examined Mr. Parks on October 4, 2004. His report is located at Tr. 195-199.

The Wechsler Adult Intelligence Scale was administered. Dr. Deppe noted that plaintiff made "only a fair effort, at best." (Tr. 196). The testing resulted in an IQ level in the low average range of intellectual functioning. (Tr. 197).

After performing a mental status examination. Dr. Deppe rated his ability to relate to others and to withstand the stress of day-to -day work activity as only fair. His ability to understand and follow simple instructions and to maintain attention required to perform simple, repetitive tasks were rated as adequate. (Tr. 198).

### 4. Medical Source Statement - Dr. Hunter-Reach

Dr. Hunter-Reach submitted a Medical Source Statement, dated August 20, 2004. (Tr. 226-229). Considering his physical impairment, she concluded that Mr. Parks has full capacity to perform sitting, turning, pushing, pulling, speaking, fine and gross manipulations. He has full capacity to perform the activities of daily living. He has 20-50 per cent reduced capacity for walking, bending, standing, stooping, and climbing. He is able to lift no more than 20 pounds with frequent lifting of only 10 pounds. (Tr. 229).

Considering his mental impairments, he has moderate limitation of his activities of daily living, social functioning, and concentration, persistence and pace. (Tr. 229).

### 5. Functional Capacity Assessment, State Agency Physician

State agency physician B. Rock Oh, M.D., completed a functional capacity assessment on February 17, 2005. (Tr. 147-154). He concluded that plaintiff was capable of performing light work with postural limitations in that he could frequently lift 10 pounds, occasionally lift 20 pounds, stand or walk for 6 out of 8 hours, sit with normal breaks for 6 out of 8 hours, and had a push/pull limitation in the upper extremities. He noted postural limitations of occasional

climbing, balancing, stooping, kneeling, crouching and crawling.  Plaintiff had no manipulative, visual, communicative or environmental limitations.

**6.**          **Mental Functional Capacity Assessment, State Agency Physician**

This assessment, dated December 13, 2004, is located at Tr. 156-172.  Mr. Parks had no "marked" limitations in any area of functioning.  He was assessed moderate limitation in ability to carry out detailed instructions, maintain attention and concentration for extended periods, work in coordination with or proximity to others, interact appropriately with the general public, accept instructions and criticism, and get along with co-workers and peers.  (Tr. 156-157).  He was noted to have the capacity to perform and sustain simple tasks with few social demands.  (Tr. 158).  He was noted to have a personality disorder.  (Tr. 167).  "C" criteria of the Listings were not present.  (Tr. 171).

## Applicable Standards

To qualify for disability insurance benefits, a claimant must be "disabled."  In this context, "disabled" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  **42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A).**  A "physical or mental impairment" is an impairment resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.  **42 U.S.C. §§ 423(d)(3) and 1382c(a)(3)(C).**

Social Security regulations set forth a sequential five-step inquiry to determine whether a claimant is disabled.  In essence, it must be determined (1) whether the claimant is presently employed; (2) whether the claimant has an impairment or combination of impairments that is severe; (3) whether the impairments meet or equal one of the listed impairments acknowledged

-8-

to be conclusively disabling; (4) whether the claimant can perform past relevant work; and (5) whether the claimant is capable of performing any work within the economy, given his or her age, education and work experience.  **See,** *Schroeter v. Sullivan***, 977 F.2d 391, 393 (7th Cir. 1992);** *Pope v. Shalala***, 998 F.2d 473, 477 (7th Cir. 1993); 20 C.F.R. § 404.1520(b-f).**

If the Commissioner finds that the claimant has an impairment which is severe and she is not capable of performing her past relevant work, the burden shifts to the Commissioner to show that there are a significant number of jobs in the economy that claimant is capable of performing. **See,** *Bowen v. Yuckert***, 482 U.S. 137, 146, 107 S. Ct. 2287, 2294 (1987);** *Knight v. Chater***, 55 F.3d 309, 313 (7th Cir. 1995).**

It is important to keep in mind the proper standard of review for this court.  "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." **42 U.S.C. § 405(g).**  Thus, the Court must determine not whether Mr. Parks is, in fact, disabled, but whether ALJ Pritchett's findings were supported by substantial evidence; and, of course, whether any errors of law were made.  **See,** *Books v. Chater***, 91 F.3d 972, 977-978 (7th Cir. 1996) (citing** *Diaz v. Chater***, 55 F.3d 300, 306 (7th Cir.1995)).**  The Supreme Court has defined substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales***, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427 (1971).**

In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this court *does not* reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ.  *Brewer v. Chater***, 103 F.3d 1384, 1390 (7th Cir. 1997).**

<u>**Analysis**</u>

Here, the ALJ properly followed the five step analysis.  She concluded that plaintiff does

have impairments of antisocial personality disorder, neuropathy of the bilateral lower extremities, diabetes, history of congestive heart failure, and history of substance abuse. (Tr. 15-16). She also found that plaintiff's impairments do not meet or equal a listed impairment, even considering his obesity. (Tr. 16). Mr. Parks does not challenge the finding that his condition does not meet or equal a listed impairment.

The ALJ found that plaintiff has the residual functional capacity (RFC) to perform light work (frequently lift 10 pounds, occasionally lift 20 pounds) limited to standing or sitting for only 4 out of 8 hours, only occasional postural activities (climbing ramps and stairs, balancing, stooping, kneeling, crouching and crawling). In view of his mental impairments, plaintiff's RFC is limited to unskilled work in a low stress environment, limited to only occasional interaction with supervisors and co-workers and no contact with the general public. (Tr. 17-18).

Because plaintiff's RFC represents less than a full range of light work, the ALJ considered the testimony of the vocational expert. She accepted his testimony that a person with Mr. Parks' RFC could perform the requirements of jobs such as hand packer and assembler, and that those jobs exist in significant numbers in the regional economy. The ALJ also found that the expert's testimony was consistent with the Dictionary of Occupational Titles. (Tr. 22).

Plaintiff first argues that "new and material evidence" requires reversal or remand. However, he points to no such new and material evidence. He notes only that a later application for SSI was approved on January 3, 2008. **See, Doc. 17, p. 3**.

The record is devoid of any indication of the nature of the disability that was found to exist on January 3, 2008. There is no indication of what evidence was presented to the agency in support of that later application. However, the mere fact that plaintiff was later found to be disabled does not indicate that ALJ Pritchett erred in finding him not disabled on the July, 2004, application. Evidence relating to a claimant's condition after the date of the administrative

-10-

hearing is not material.  See, *Schmidt v. Barnhart*, **395 F.3d 737, 742 (7th Cir. 2005)**, and cases cited therein.

Secondly, plaintiff argues that the ALJ erred in failing to ask the vocational expert whether his testimony was consistent with the information contained in the Dictionary of Occupational Titles.  Again, this point is a non-starter.  It is true that an ALJ does have a duty to make that inquiry.  *Prochaska v. Barnhart*, **454 F.3d 731, 735 (7th Cir. 2006)**.  However, the critical difference between *Prochaska* and this case is that, in *Prochaska*, plaintiff identified discrepancies between the vocational expert's testimony and the DOT.  *Prochaska*, *Id.* **at 736.**  Here, Mr. Parks has not identified any inconsistency between the testimony and the DOT.  Rather, he argues for a *per se* finding of error.  The Seventh Circuit has rejected such a *per se* rule, and has, instead, applied a harmless error analysis.  *Ketelboeter v. Astrue*, **550 F.3d 620, 625-626 (7th Cir. 2008)**.

Here, the ALJ stated in her decision that the testimony was consistent with the information contained in the DOT, and plaintiff has not demonstrated that her conclusion was incorrect.  Plaintiff has not suggested that the expert's testimony actually conflicts with the DOT.  Therefore, there is no basis on which to find that the error was anything but harmless.

Lastly, Mr. Parks argues that the ALJ erred in failing to credit his testimony that taking his medications causes him to fall asleep for six hours.  The ALJ did, in fact, note that he testified that his medications had side effects of dry mouth and sleepiness.  (Tr. 19).  She found that his statements regarding the intensity, persistence, and limiting effects of his symptoms was not entirely credible.  (*Id*).

In essence, plaintiff's point is that the ALJ should have accepted his testimony that his medications cause him to fall asleep for six hours.  He is incorrect.  The ALJ does not have to credit the plaintiff's testimony.  *Johnson v. Barnhart*, **449 F.3d 804, 805 (7th Cir. 2006).**  A

reviewing court must afford an ALJ's credibility finding "considerable deference" and can overturn it only if it is "patently wrong." ***Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir.2006);** *Schmidt v. Barnhart*, **395 F.3d 737, 746-47 (7th Cir.2005).** "Only if the trier of fact grounds his credibility finding in an observation or argument that is unreasonable or unsupported ... can the finding be reversed." ***Sims v. Barnhart*, 442 F.3d 536, 538 (7th Cir.2006)**.

Here, the ALJ's credibility findings were based on observations that are reasonable and supported by the record. For instance, the ALJ noted that, on November 16, 2006, Plaintiff reported to a healthcare provider that his physical health was under fairly good control with his current medications. (Tr. 20). She also noted that he reported that, since he began taking his medications, he was able to complete his activities of daily living independently. (*Id*.).

Nowhere in the medical records did plaintiff ever complain that his medications cause him to be so sleepy that he falls asleep for 6 hours after taking them. On the contrary, the records contain several instances of plaintiff stating that he was doing well on his medications. In fact, plaintiff complained of difficulty sleeping before beginning to take Lamictal; he reported to Dr. Warshauer that Lamictal was "very beneficial in terms of his being able to sleep." (Tr. 241). In April, 2005, plaintiff told Dr. Mings that he had "considerable improvement" with Lamictal in that he felt more calm and his mood was more stable. He even told Dr. Mings that he was able to think more clearly since starting the medication. He reported "no problems with appetite or sleep." (Tr. 240).

In short, no treating doctor ever noted any complaint that his medications caused him to sleep for 6 hours. Plaintiff's statements to Dr. Mings suggest the opposite. The treating source statements did not suggest that plaintiff experienced such side-effects from his medications. Contradictions and discrepancies between the objective evidence in the record and plaintiff's

-12-

"self-reports may suggest symptom exaggeration." **Getch v. Astrue, 539 F.3d 473, 483 (7th Cir. 2008).** The credibility finding of the ALJ on this record was not patently wrong.

In sum, after careful review of the record and of the briefs of the parties, this court is convinced that the ALJ's decision is supported by substantial evidence in the record, and that no errors of law were made.

### **Recommendation**

For the aforesaid reasons, it is the recommendation of this Court that the final decision of the Commissioner of Social Security finding that plaintiff Damon B. Parks is not disabled, and therefore not entitled to Supplemental Security Income Benefits, be **AFFIRMED**.

Objections to this report and recommendation must be filed on or before **February 8, 2010.**

**Submitted: January 22, 2010.**     s/ Clifford J. Proud
                                     **CLIFFORD J. PROUD**
                                     **UNITED STATES MAGISTRATE JUDGE**